UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) WESTERN HERITAGE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | Case No.: |
| vs. | ) | |
| | ) | |
| (1) WARDLAW CLAIMS SERVICES, INC., and (2) RIMKUS CONSULTING GROUP, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Western Heritage Insurance Company ("**Western Heritage**") hereby files its Complaint against Defendants Wardlaw Claims Services, Inc. ("**Wardlaw**") and Rimkus Consulting Group, Inc. ("**Rimkus**").

1.     Plaintiff, Western Heritage, is an Arizona corporation with a principal place of business in Scottsdale, Arizona.  Western Heritage is authorized to issue policies of insurance in Oklahoma.

2.     Defendant, Wardlaw, is a Texas corporation with a principal place of business in Waco, Texas.

3.     Defendant, Rimkus, is a Texas corporation with a principle place of business in Houston, Texas.

## Jurisdiction and Venue

4.     This Court has personal jurisdiction over each of the named parties.

1

5.     This Court has subject matter jurisdiction over Western Heritage's claims pursuant to 28 U.S.C. § 1332(a)(1) by virtue of the fact that the controversy between the parties hereto exceeds the value of $75,000 and is between citizens of different states.

6.     Venue is proper in this Court by virtue of the fact that this matter arises out of events which occurred within the jurisdictional boundaries of this Court.

## Facts Common to All Claims

7.     At all times relevant, Western Heritage had in effect a policy of property insurance with Cowboy Junction Church ("**Cowboy Junction**"), located at 27544 South 4380 Road in Vinita, Oklahoma ("**Premises**").

8.     On July 24, 2011, a fire occurred at the Premises.

9.     Western Heritage retained Wardlaw to adjust the loss incurred by Cowboy Junction as a result of the fire and to investigate the origin and cause of the fire.  The purpose for conducting an origin and cause investigation was to determine whether the fire at the Premises had subrogation potential; in other words, whether Western Heritage would be able to pursue third parties for recovery of its payments to Cowboy Junction.

10.     Wardlaw determined that Cowboy Junction had $917,213.15 in insured losses as a result of the fire at its Premises, and Western Heritage has paid this amount to or on behalf of Cowboy Junction pursuant to its policy of insurance with Cowboy Junction.

11.     Wardlaw retained Rimkus to determine the origin and cause of the fire.  A copy of the contract between Rimkus and Wardlaw is attached hereto as Exhibit A.

12.     Pursuant to its assignment from Wardlaw, Rimkus examined and documented the Premises.  On the same date as Rimkus' examination, July 27, 2011, the Rimkus investigator contacted Wardlaw to discuss his initial findings:

2

> **Adjuster received call from C&O investigator to discuss the fire loss.  Mr. Swan explained that in his preliminary findings that the fire did originate inside the walk-in cooler in the refrigeration unit in the walk-in cooler.  This walk-in cooler is located on the rear elevation of the restaurant and attached to the building.  Mr. Swan stated that once the fire originated inside the walk-in cooler it then traveled into the adjoining two church buildings.  Mr. Swan explained that he would complete a short report and forward to adjuster within the next few days.**

*See* Exhibit B, Wardlaw Claim Notes.  This information was not provided to Western Heritage, as was required by Wardlaw's retention by Western Heritage.

13.    The day after Rimkus completed its initial investigation, on July 28, 2011, the Wardlaw adjuster made the following notation:

> **Adjuster called and spoke with insured's agent Doug Donely and explained that the C&O investigator had [sic] release the property at this time and the insured could start the debris removal in order to be able to open the school on Monday 8/1/2011.**

*See* Exhibit B.  This information was not provided to Western Heritage until after the Premises were released and the evidence destroyed.

14.    At no time prior to the destruction of the evidence did the Wardlaw adjuster recommend or even discuss the need to preserve the Premises or any evidence of the origin and cause of the fire, nor did Wardlaw notify Western Heritage about the results of Rimkus' initial investigation or any potential subrogation.

15.    Rimkus issued its Report of Findings ("Report") on August 17, 2011, which contained the following conclusions:

> 1. **The origin of the fire was inside a walk-in cooler adjacent to the east side of the building.**
> 2. **The source of ignition was not determined.**
> 3. **The first material ignited was not determined.**
> 4. <u>**The cause of the fire will be listed as undetermined awaiting further examination results of the condensing unit.**</u>

*See* Exhibit C, Rimkus Report.

16.     The Rimkus Report further states:

**The walk in cooler was a 20 foot by 8 foot 3 inch modular container situated next to a 60 foot by 120 foot building that was constructed in 2001.  The attached modular cooler was manufactured by International Cold Storage (ICS) in Andover, Kansas.  Access to the interior of the cooler was from a door on the east wall of the building.  The larger building housed the Chuck Wagon restaurant operated by the Cowboy Junction Church.**


**. . .**

**The walk-in cooler/freezer was brought in and placed next to the Chuck Wagon building.**

**. . .**

**The fire's origin was inside of the walk-in cooler/freezer.  The cooler portion was found on the south portion and the freezer portion was on the north end of the structure.  The cooler's condensing unit was on the east wall.  The copper and twisted metal was resting on a shelf.  The copper tubing had holes to the copper. NO electrical controls for the condensing unit were found. . . .**

**. . .**

**In conclusion, we determined the fire originated inside the walk-in cooler/freezer on the east wall in the cooler portion.**

**We examined the remains of the condenser unit in the cooler, but did not disturb any evidence for further examination by any interested parties.**

**The cause of this fire will be listed as undetermined awaiting further examination results of the condensing unit.**

17.     The first information that Wardlaw provided to Western Heritage concerning the cause and origin of the fire on the Premises was the Rimkus Report.  However, by the time the Rimkus Report was issued, unbeknownst to Western Heritage and with the approval of Rimkus and Wardlaw, the evidence had been destroyed and the Premises had been completely cleaned up.

18.     Western Heritage retained Wardlaw to properly and professionally adjust the Cowboy Junction claim and to determine the cause and origin of the fire.  Wardlaw retained

Rimkus to conduct a fire investigation of the Premises and to take appropriate steps to determine the cause of the fire so that Western Heritage could recover payments it made to Cowboy Junction in a subrogation action.

## COUNT I—NEGLIGENCE
### (Wardlaw)

19.     Western Heritage re-pleads all allegations set forth above as if fully restated herein.

20.     Defendant Wardlaw had, *inter alia,* the following duties to Western Heritage:

a.     To properly and professionally adjust the Cowboy Junction claim;

b.     To determine the origin and cause of the fire on the Premises, or to retain a competent investigator to do so;

c.     To ensure that evidence supporting potential subrogation causes of action was properly retained and preserved; and

d.     To provide timely reports to Western Heritage.

21.      Defendant Wardlaw breached each of the foregoing duties to Western Heritage, resulting in damages to Western Heritage in an amount in excess of $75,000.

WHEREFORE, Western Heritage respectfully requests that this Court: (i) enter judgment against Defendant Wardlaw for an amount in excess of $75,000; (ii) award Western Heritage attorney fees and costs; (iii) award Western Heritage prejudgment and post judgment interest as allowed by law; and, (iv) award Western Heritage any and all other relief to which it may show itself entitled.

## COUNT II—BREACH OF CONTRACT
### (Wardlaw)

22.     Western Heritage re-pleads all allegations set forth above as if fully restated herein.

5

23.     Defendant Wardlaw breached its agreement with Western Heritage by, *inter alia*, failing to perform the following:

      a.   Properly and professionally adjusting the Cowboy Junction claim;

      b.   Determining the origin and cause of the fire on the Premises, or retaining a competent investigator to do so;

      c.   Ensuring that evidence supporting potential subrogation causes of action was properly retained and preserved; and

      d.   Providing timely reports to Western Heritage.

24.     Defendant Wardlaw's breach of its agreement with Western Heritage has resulted in damages to Western Heritage in an amount in excess of $75,000.

WHEREFORE, Western Heritage respectfully requests that this Court: (i) enter judgment against Defendant Wardlaw for an amount in excess of $75,000; (ii) award Western Heritage attorney fees and costs; (iii) award Western Heritage prejudgment and post judgment interest as allowed by law; and (iv) award Western Heritage any and all other relief to which it may show itself entitled.

## COUNT III—NEGLIGENCE
### (Rimkus)

25.     Western Heritage re-pleads all allegations set forth above as if fully restated herein.

26.     Defendant Rimkus had, *inter alia,* the following duties to Western Heritage:

a.      To determine the origin and cause of the fire on the Premises; and

b.      To ensure that evidence supporting potential subrogation causes of action was properly retained and preserved.

27.     Defendant Rimkus breached each of the foregoing duties to Western Heritage, resulting in damages to Western Heritage in an amount in excess of $75,000.

WHEREFORE, Western Heritage respectfully requests that this Court: (i) enter judgment against Defendant Rimkus for an amount in excess of $75,000; (ii) award Western Heritage attorney fees and costs; (iii) award Western Heritage prejudgment and post judgment interest as allowed by law; and, (iv) award Western Heritage any and all other relief to which it may show itself entitled.

Respectfully submitted,

s/ Chad M. Neuens
Chad M. Neuens, Esq.
Brian L. Mitchell, Esq.
Neuens Mitchell Freese pllc
2021 S. Lewis Ave., Suite 660
Tulsa, Oklahoma 74104
Telephone: (918) 749-9334
Facsimile: (918) 749-9336

**COUNSEL FOR PLAINTIFF,
WESTERN HERITAGE INSURANCE
COMPANY**