IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 4:13-CV-367-JED-PJC |
| ) | |
| WARDLAW CLAIMS SERVICES, INC., ) AND RIMKUS CONSULTING GROUP, ) INC., ) ) | |
| Defendants, ) | |

**JOINT STATUS REPORT**

**JURY DEMANDED:**   ☐ Yes   ☒ No - However, it is anticipated that Parties will request one later. Rimkus has not yet filed an Answer. If an Answer becomes necessary, Rimkus intends to demand a jury.

**I.   Summary of Claims:**

This matter is a claim by Western Heritage Insurance Company ("Western Heritage") against Rimkus Consulting Group, Inc. ("Rimkus") and Wardlaw Claims Service LLP ("Wardlaw") for professional negligence. It arises out of a fire which occurred on July 24, 2011 ("Incident") at a facility owned by Cowboy Junction Church located at 27544 South 4380 Road in Vinita, Oklahoma. At the time of the Incident, Cowboy Junction was insured by Western Heritage. Cowboy Junction sustained $917,213.15 in damage, including its deductible, to its facility as a result of the Incident.

After the Incident, Western Heritage retained Wardlaw to adjust Cowboy Junction's claim. As part of its investigation, Wardlaw retained Rimkus to conduct an origin and cause investigation of the fire. Rimkus conducted its investigation of the fire on July 27, 2011. According to the documentation received by Western Heritage, Rimkus determined that the fire originated inside a walk-in cooler located within the Cowboy Junction facility. Rimkus also determined that the cause of the fire will be listed as undetermined pending further examination of the condensing unit inside the cooler. Rimkus recommended that an electrical engineer be retained to conduct the examination.

Notwithstanding the foregoing, Rimkus and Wardlaw released the fire scene and allowed Cowboy Junction to overhaul the scene, destroying all evidence of the cause of the fire, prior to Western Heritage being able to retain an electrical engineer, place parties on

notice, or conduct further investigation. As a result, Western Heritage was unable to subrogate against the manufacturer of the walk-in cooler.

    A.    **Claims to be Dismissed:**

It is not anticipated at this time that any Parties will be dismissing any claims now asserted.

II.    **Summary of Defenses**

Wardlaw:

Wardlaw performed an assignment from Western Heritage Insurance Co. ("Western Heritage") to adjust a fire loss claim of its insured, Cowboy Junction Church. With Western Heritage's specific authorization, Wardlaw retained, on behalf of Western Heritage, Rimkus Consulting Group, Inc. ("Rimkus") as a cause and origin investigator. Rimkus was Western Heritage's agent. Rimkus investigated the fire. Rimkus determined the origin of the fire was a walk-in cooler located on the insured's property. Rimkus informed Wardlaw that further examination of the walk-in cooler would be futile due to its extensive damage. Wardlaw conveyed this information to Western Heritage, which, then, expressly authorized the removal of the walk-in cooler from the insured's property. In addition, Western Heritage did not request or authorize further testing of the walk-in cooler. Western Heritage cannot establish that the walk-in cooler was the cause of the fire loss. Western Heritage's negligence and contract counts are a claim for spoliation of evidence. Such a claim is not a cognizable cause of action under Oklahoma law. If Western Heritage's counts are regarded as an alleged lost opportunity to pursue subrogation claims for the fire loss, those counts are not viable under Oklahoma law: Western Heritage cannot establish causation of the underlying fire loss. Nor can Western Heritage show that Wardlaw caused such alleged lost opportunity. Wardlaw did not enter into a contract with Rimkus, as Rimkus has alleged. Under Oklahoma law, Wardlaw is entitled to implied or common law indemnity or equitable indemnity from Rimkus if tort or contract liability attaches to Wardlaw. Neither Texas law nor the alleged limitation on remedies under Rimkus' alleged contract apply to Wardlaw. Wardlaw denies all liability to Western Heritage and/or Rimkus.

Rimkus:

Western Heritage retained Wardlaw to adjust the fire loss. Wardlaw engaged Rimkus, pursuant to a contract, to provide advice, judgments and opinions in connection with the investigation of the subject fire exclusively for Wardlaw. Rimkus concluded that the fire started in a walk-in freezer/cooler unit, but could not determine the cause of the fire. Accordingly, Rimkus' investigator recommended to Wardlaw that an electrical engineer further examine the scene. Rimkus' investigator left the evidence undisturbed to facilitate any further inspections that Wardlaw might decide to conduct. Apparently, Wardlaw did not follow Rimkus' recommendation to use an electrical engineer for further evaluation of the scene. Within only a few days after Rimkus made its on-site

inspection, all of the fire rubble, including the walk-in freezer/cooler unit, was cleared and disposed of by Cowboy Junction.

As to Western Heritage's claims: Rimkus did not owe any duty to Western Heritage to preserve the walk-in cooler. Rimkus' duties were only to Wardlaw, and then only as defined under the contractual Terms and Conditions under which Rimkus performed its fire investigation. The contract expressly provides that there are no third-party beneficiaries. Moreover, Oklahoma law does not recognize spoliation as a viable cause of action, which, in essence, is Western Heritage's cause of action. Western Heritage's claim further is speculative. Additionally, the federal case should be stayed pending the prosecution of Rimkus' first-filed lawsuit against Western Heritage, pending in Texas State Court.

As to Wardlaw's crossclaims: A declaratory judgment suit is not proper where the plaintiff is seeking the determination of facts. Alternatively, the questions that Wardlaw's declaratory judgment suit raises should be stayed so that the first-filed Texas suit can proceed. Additionally, Rimkus did not owe Wardlaw any specific duty to retain the walk-in cooler. Moreover, the contract under which Rimkus performed its services provides that Texas law applies, and also contains a mandatory venue provision. Under Texas law, no common-law indemnity exists that would obligate Rimkus to pay Wardlaw if Western Heritage prevails over Wardlaw. Additionally, Wardlaw's failure to bring its crossclaim against Rimkus in Texas, as provided for by the mandatory venue provision, should result in the dismissal of the crossclaims for improper venue.

Rimkus notes that it has not yet filed an answer to either Western Heritage's Complaint or Wardlaw's Crossclaim in that motions to dismiss are pending. Accordingly, Rimkus reserves the right to assert all defenses at the appropriate time.

    **A.    Defenses to be Abandoned:**

    Wardlaw – None.
    Rimkus- None.

**III.    Motions Pending (Include Docket Number, Description and Date at Issue):**

Rimkus' Motion to Dismiss or, in the Alternative, Motion to Stay (Dkt. #12). All briefing has been completed on this Motion and it is ripe for decision.
Rimkus' Motion to Dismiss Crossclaims of Wardlaw (Dkt. #27).
Western Heritage's Motion to Dismiss Counterclaim (Dkt. #26).

**IV.    Stipulations:**

    **A.    Jurisdiction Admitted:**    ☒ Yes    ☐ No (If no, explain.)

    **B.    Venue Appropriate:**    ☐ Yes    ☒ No (If no, explain.)
    Rimkus asserts that Wardlaw's crossclaims against it should be dismissed because the mandatory venue provision contained in the Terms and Conditions under

which Rimkus performed its fire investigation provides that venue is proper only in Texas.

Wardlaw: Venue is proper in this district for Wardlaw's Crossclaims, because Rimkus' purported Contract and its venue provision does not apply to Wardlaw.

**C.**   **Facts:**

On July 24, 2011, a fire occurred at the Cowboy Junction Church in Vinita, Oklahoma ("Premises"). Western Heritage retained Wardlaw to adjust the loss incurred by Cowboy Junction as a result of the fire. Wardlaw determined that Cowboy Junction had $917,213.15 in insured loss as a result of the fire at the Premises. Rimkus issued a written Report of Findings on August 17, 2011.

**D.**   **Law:**
Negligence and professional negligence.

**V.**   **Proposed Deadlines:**

**A.**   **Parties to be added by:**   11/15/2013

**B.**   **Proposed discovery cutoff date (4 months of discovery unless extended by the court for good cause):**   3/31/2014

**C.**   **Fact witness lists to be exchanged by:**   11/30/2013

**D.**   **Proposed Date for Expert Reports by Plaintiff and Defendant:**

**Plaintiff:** 1/15/2014   **Defendants:** 2/15/2014

**VI.**   **Fed. R. Civ. P. 26(f) Discovery Plan**

**A.**   **Should any changes be made to the timing, form or requirements for disclosures under Rule 26(a)?**

☐ Yes   ☒ No

**B.**   **When were or will initial disclosures under Rule 26(a)(1) be made?**

9/30/2013 by agreement

Note that pursuant to Rule 26(a)(1), initial disclosures must be made within 14 days after you confer for the purpose of preparing this discovery plan. All parties are under an affirmative duty to (i) comply with the mandatory disclosure requirements, and (ii) notify the Court of any nondisclosure so that the issue can be promptly referred to a Magistrate Judge for resolution. Failure of any party to disclose information, or failure of any party to bring disclosure issues to the Court's attention in a timely manner, may result in sanctions, including prohibiting the use of that information at trial, pursuant to Rule 37(c)(1).

  **C.** **Should discovery be conducted in phases and/or should discovery be limited at this time to particular subject matters or issues?**

   ☐ Yes  ☒ No

  **D.** **Should any changes be made in the limitations on discovery imposed by the Federal Rules of Civil Procedure or the Court's local rules?**

   ☐ Yes  ☒ No

   If yes, please explain:

  **E.** **Proposed number of fact and expert depositions:**

   1. To be allowed for Plaintiff?  Ten
   2. To be allowed for Defendant?  Ten for each Defendant

  **F.** **Is there any need for any other special discovery management orders by the Court?**

   ☐ Yes  ☒ No

  **G.** The parties are directed to Guidelines for Discovery of Electronically Stored Information on the public website at www.oknd.uscourts.gov for advise on the production of electronic information.

**VII.** **Are Dispositive Motions Anticipated?**

  ☒ Yes  ☐ No

If yes, describe them. See Motions to Dismiss described above, and any Motions for Summary Judgment that may subsequently become supported following discovery

**VIII.** **Do All Parties Consent to Trial before the Assigned Magistrate Judge?**

  ☐ Yes  ☒ No

If yes, please attach completed Trial Consent form and indicate the month and year in which trial by the Magistrate Judge is requested.

**IX.** **Is there any matter that should be referred to the assigned Magistrate Judge for final disposition upon partial consent of all the parties pursuant to Local Rule 73.1?**

  ☐ Yes  ☒ No

**X.   Settlement Plan (check one)**

☒   Settlement Conference Requested after:   Completion of Discovery

Describe settlement judge expertise required, if any:   Note: Mediation previously conducted on 5/30/2013 in connection with Rimkus' Texas Action against Western Heritage.

☐   Private Mediation Scheduled in _____(date): Note: Mediation previously conducted on 5/30/2013 in connection with Rimkus' Texas Action against Western Heritage.

☐   Other ADR (Explain)

☐   ADR is not appropriate in this case (Explain)

Has a copy of the Court's ADR booklet been provided to clients as required?

Plaintiff:   ☒ Yes   ☐ No

Defendant:   ☒ Yes   ☐ No

**XI.   Does this case warrant special case management?**   ☐ Yes   ☒ No

**XII.   Do the parties request that the Court hold a scheduling conference?**

☐ Yes   ☒ No

If a conference is not requested, or ordered by the Court, the Court will, after receiving this report, issue a scheduling order based on the information contained in this report.

**XIII.   Estimated trial time:**   7 days

6

Dated this 24th day of September 2013    Respectfully submitted,

        **NEUENS MITCHELL FREESE, PLLC**

By:  */s/* Chad M. Neuens
      Chad M. Neuens, OBA #15402
      Brian L. Mitchell, OBA #19529
      Lewis Center Building
      2021 S Lewis Avenue, Suite 660
      Tulsa, OK 74104
      Telephone:  (918) 749-9334
      Facsimile:  (918) 749-93369
      Email:  cneuens@neuensmitchell.com
      Email:  bmitchell@neuensmitchell.com

**ATTORNEYS FOR PLAINTIFF, WESTERN HERITAGE INSURANCE COMPANY**

**FRANDEN, WOODARD, FARRIS, QUILLIN & GOODNIGHT**

*/s/* Joseph R. Farris
Joseph R. Farris, OBA #2835
Jeremy K. Ward, OBA #21400
2 West 2nd Street, Suite 900
Tulsa, OK 74103
Telephone:  (918) 583-7129
Facsimile:  (918) 584-3814
Email: jfarris@tulsalawyer.com
Email: jward@tulsalawyer.com

**ATTORNEYS FOR DEFENDANT WARDLAW CLAIMS SERVICE, LLP**

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*/s/* John F. Heil, III
John F. Heil, III, OBA #15904
Travis Cushman, OBA #30368
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
Email:  jheil@hallestill.com

and

**WARD LAW FIRM**

*/s/* David A. Ward, Jr
David A. Ward, Jr., admitted pro hac vice
10077 Grogan's Mill Rd., Suite 450
The Woodlands, Texas 77382

**ATTORNEYS FOR DEFENDANT RIMKUS CONSULTING GROUP, INC**.

1828505.1:999914:00014